Filed 2/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONALD W. LIPSETT, JR.,<br><br>    Defendant and Appellant. | F065496<br><br>(Tuolumne Super. Ct.<br>No. CRF34641)<br><br>**OPINION** |

--

APPEAL from a judgment of the Superior Court of Tuolumne County. James A. Boscoe, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Alice Su, Deputy Attorneys General, for Plaintiff and Respondent.

--

**BACKGROUND**

Defendant was charged with one count each of carjacking (count I - Pen. Code,[1] § 215, subd. (a)), vehicle theft (count II - Veh. Code, § 10851, subd. (a)) and making a

---

[1] All subsequent statutory references are to the Penal Code unless otherwise noted.

criminal threat (count III - § 422).  The information contained firearm use allegations as to each count.  (§ 12022, subd. (a)(1).)  It further alleged defendant suffered a prior serious or violent felony conviction.  (§§ 667, subds. (b)-(i), 667.5, subd. (b).)

Defendant was convicted on all substantive counts.  The jury was unable to reach verdicts on the firearm use allegations.  The trial court found the prior conviction allegations true.

The court sentenced defendant to the upper term on each count as follows:  9 years on count I (carjacking), a stayed term of 3 years count II (unlawful taking of a vehicle) and a concurrent term of 3 years on count III (criminal threats).  The 9-year term was doubled pursuant to section 667, subdivisions (b)-(i).  A consecutive term of 5 years and a stayed term of 1 year were imposed for the prior conviction findings.  (§§ 667, subd. (a), 667.5, subd. (b).)  The total aggregate term was 23 years.

## TRIAL EVIDENCE

On the evening of September 6, 2010, David Smith's dirt bike was parked outside his bedroom window.  At around 4:00 a.m. on September 7, Smith heard a large truck backing up on his driveway.  A male jumped out of the passenger seat and ran to Smith's bike.  Smith realized his bike was being stolen, so he went outside and confronted the man who was now dragging the bike.  Smith and the man got into "a tug of war over the bike."  Smith yelled, " 'Drop the bike[]' " several times.

Smith's German shepherd dog came outside.  The man who was dragging Smith's bike screamed at the top of his lungs:  " 'Shoot him; shoot him; shoot the dog….' "  He said "shoot him" or "shoot the dog" several times, "meaning…six, eight, ten times."

The driver of the truck exited the vehicle and started to approach Smith.  The driver lifted his arm up, holding what "looked like a gun." Smith described it as a small, black gun that "looked to be a revolver[.]"  The driver pointed it at Smith's stomach.  Smith ran away.  He saw his wife and child standing at the front door, and asked his wife

to call 9-1-1.  Smith said, " 'Oh, I'm going to go get one of my guns,' " and ran towards his house.

The two men threw the bike into the back of the truck.  By the time Smith returned from his home, the truck was leaving.

*Photographic Lineups*

Smith was shown a photographic lineup.  Smith said none of the photographs "really matched" the person he had seen stealing his bike.  He was shown a second photographic lineup one week later.  He selected defendant's photograph and said, " 'That's the guy right there.' "

*Recovery of the Bike*

A few days after the bike was stolen, a man named Fred Esguerra, Jr., was stopped by a highway patrolman.  Esguerra was riding a bike he had recently bought from defendant for $500.  The bike was returned to Smith.

**DISCUSSION**

I.  **THERE WAS SUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION FOR VIOLATING SECTION 422, SUBDIVISION (a)**

A.  Standard of Review

Defendant contends there was insufficient evidence to support his conviction for violating section 422, subdivision (a).

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."  [Citation.]' "  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

B. Section 422, subdivision (a)

Section 422, subdivision (a) provides, in part:

> "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished …."

The statutory language can be divided into five elements the prosecution must prove: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances.' [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

C. Analysis

Defendant contends he was improperly convicted of making criminal threats because he did not "direct" the alleged threat to the victim, Smith.[2]  This contention is

_____

[2] Defendant also seems to suggest his comment was not a threat because it was not phrased as an " 'or else' statement."  But, section 422 explicitly encompasses "unconditional" threats.  (§ 422, subd. (a).)  The absence of conditional language does not undermine the conviction, it supports it.

true in a limited sense not relevant here.  In a purely grammatical sense, defendant's comment was not "directed" to Smith, because it used the third-person pronoun, "him." As we will explain, this fact is irrelevant.

"The language of section 422 is sufficiently clear so that 'its plain meaning should be followed.'  [Citation.]"  (*In re David L.* (1991) 234 Cal.App.3d 1655, 1658.) Accordingly, our analysis begins and ends with the statutory text.

By its plain language, section 422 contains no exception for threats that are technically addressed to third parties.  Instead, it requires that a defendant intend "the statement … to be taken as a threat" by the victim.  (§ 422, subd. (a).)  A defendant may harbor such intent even while grammatically addressing the threat to someone other than the victim.

Consider a hypothetical where two gang members capture a suspected police informant in their ranks.  The gang members want the victim to admit to informing on the gang, so they interrogate him.  The informant denies the gang members' accusations, and one gang member tells the other gang member:  "I am going to shoot the snitch for lying."  He makes the statement in earshot of the victim, intending to scare the victim into telling the truth.  The statement would not fall outside the scope of section 422 merely because it did not reference the victim with a second person pronoun.

Thus, the true question presented is whether defendant intended his "statement … to be taken as a threat" by Smith (§ 422, subd. (a)), not whether the threat was syntactically addressed to him.  Here, there is sufficient evidence defendant possessed the

---

Defendant also contends the threat did not cause Smith to be "in sustained fear for his … own safety or for his … immediate family's safety .…"  (§ 422, subd. (a).)  But Smith specifically testified that he was "worried" when defendant made the threat.  As defendant notes, Smith went on to testify that he became *more* worried when the driver exited the vehicle.  But this does not alter the fact that *both* occurrences – the threat and the driver's subsequent conduct – "worried" Smith, albeit one more than the other.  The jury was free to conclude that Smith was in sustained fear for himself and/or his family as a result of the threat.

requisite intent. Defendant was yelling the statement at the top of his lungs while engaged in a "tug of war" with Smith over the bike he was trying to steal. Smith's German shepherd was nearby. The jury could have reasonably inferred that defendant made the threat intending to scare Smith into retreating with his dog so defendant could steal the bike and escape.

We therefore reject defendant's contentions regarding sufficiency of the evidence.

## II. UNLAWFULLY TAKING A VEHICLE IS NOT A LESSER INCLUDED OFFENSE OF CARJACKING

Defendant also posits that unlawful taking of a vehicle (Veh. Code, § 10851) is a lesser-included offense of carjacking (§ 215). Therefore, he contends, his conviction for unlawfully taking a vehicle must be reversed.

Defendant's premise is incorrect. Quite simply, "unlawfully taking a vehicle is not a lesser included offense of carjacking .…" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1035.)[3] A defendant may be convicted of both crimes.

### DISPOSITION

The judgment is affirmed.

_____
Poochigian, J.

WE CONCUR:

_____
Levy, Acting P.J.

_____
Kane, J.

---

[3] In his reply brief, defendant virtually concedes this issue. Defendant acknowledges *Montoya*'s holding and our duty to follow it.